DECISION AND JOURNAL ENTRY
Defendant, Christopher Adcox, has appealed from his conviction for felonious assault in the Lorain County Common Pleas Court. This Court affirms.
 I.
On April 29, 1997, Defendant was indicted by the Lorain County Grand Jury on one count of felonious assault, a violation of R.C. 2903.11(A)(1) and/or (A)(2). The charges were based on events that occurred on January 20, 1997, at a party at David Wycosky's apartment in Northridgeville, Ohio. A jury trial commenced on October 27, 1997.
At trial, the State presented the testimony of several witnesses. First, the State presented the testimony of Michael Whalen, a guest at the party. Whalen testified that Defendant and Christopher Hughes got into an argument in the bathroom because Hughes called Defendant's friend, Robert Shue, a derogatory term. Whalen stated that the argument turned into a brawl, and Shue entered the fray.
Wycosky also testified for the state. He testified that when he went into the bathroom to break up the fight, Hughes was in the bathtub, and Defendant and Shue were looming over him. As Wycosky attempted to break up the fight, Hughes got away from his attackers and ran into the kitchen. Both Whalen and Wycosky testified that once Hughes reached the kitchen, he grabbed a kitchen knife off of the counter; however, he tripped as he was spinning back around, fell backwards and hit his head on the floor. Wycosky immediately took the knife away from Hughes. Whalen testified that, at that time, Shue pulled out a gun and began pistol-whipping Hughes. Wycosky also saw Shue with the gun, but he was unsure if Shue hit Hughes with it. Whalen testified that Hughes was on the floor crying and begging Shue and Defendant to stop beating him.
Wycosky told the combatants that they had to leave his apartment. Whalen and Wycosky both testified that, at that point, Shue dragged Hughes out of Wycosky's apartment and into the hallway. Whalen testified that Defendant and Shue continued hitting and kicking Hughes for several minutes. Whalen testified that, while in the hallway, Shue handed the gun to Defendant who began pistol-whipping Hughes. Wycosky testified that he was unsure if Defendant and Shue hit Hughes out in the hallway and that he did not see if Defendant hit Hughes with the gun.
The State also presented the testimony of Michelle Allen. Allen testified that she lives in an apartment across the hall from Wycosky. She testified that, on the night in question, she heard something hit her door, so she looked out her peephole. She saw "two white guys beating the crap out of some black guy." The black guy was lying on the ground and the other two were standing over him kicking and punching him. She thought she saw one of the white guys holding a gun. She was, however, unable to identify any of the people involved.
Next, the State presented the testimony of Dawn Schultz, who was dating Hughes at the time of the incident. She stated that Defendant went to her home prior to the incident, sometime between 9:00 and 9:30 p.m. She stated that she drove him to a gas station, and that, during the ride, he made reference to having a gun. Later that night, around 12:00 a.m., she saw Defendant with Shue. She testified that Defendant told her that Hughes had a "smart mouth and an attitude, and that he was trying to talk to his girlfriend, Star." She stated that Defendant told her that he wanted to fight Hughes. Around 1:00 a.m., Hughes went to her house, and, according to her, he was bloody from head to toe, had a swollen eye and a fat lip.
Additionally, the State presented the testimony of Steve Andrews. Andrews testified that he had known Defendant for two years. Andrews stated that he went to the party with Defendant, but he had left the party prior to the fight. He did, however, speak with Defendant a day or two after the incident. Defendant told him that he had hit Hughes and knocked him into the bathtub. Defendant also told him that he and Shue had broken the gun into pieces and had gotten rid of it. Andrews testified that he was originally a suspect in the incident; however, he was cleared when the police learned that he had left the party prior to the fight. He did not inform the police about Defendant's statements while he was a suspect in the investigation.
Defendant was the sole witness for the defense. Defendant stated that he went to Wycosky's apartment with Shue, Andrews, Stacy Raper, and Star Pooley. Shortly after they got to Wycosky's, Defendant and Andrews left and went to Dawn Schultz's apartment to make a phone call. Schultz drove Defendant to a gas station, and when they got back, Defendant, Andrews and Hughes went back to the party at Wycosky's apartment. Defendant claimed that Shue and Hughes got into an argument while they were playing cards. Defendant stated that Hughes appeared to be drunk and belligerent and that Hughes had made some derogatory remarks to Shue. According to Defendant, Shue walked into the bathroom, and Hughes followed him. While Shue and Hughes were in the bathroom, an argument ensued.
Defendant testified that he went into the bathroom and saw Hughes arguing with Shue. Hughes had his fists clenched and Defendant thought that Hughes had something in his hand. According to Defendant, Hughes attempted to lunge at Shue. As a result, Defendant tried to grab Hughes and they fell into the bathtub. Hughes got up and ran out into the kitchen.
When Defendant came out of the bathroom, he saw that Hughes had a knife in his hand. Defendant testified that he was afraid. Defendant said that he lunged at Hughes in an attempt to subdue him, and as a result, he received a cut on his left hand. According to Defendant, he and Hughes both fell into the banister. He landed on top of Hughes and saw Shue and Wycosky standing over him. Wycosky and Shue started hitting Hughes in the face, and then Wycosky got the knife away from him. Shue grabbed Hughes and pulled him out into the hallway. Defendant testified that he never saw Shue with a gun and was not aware that Shue had a gun. According to Defendant, he did not hit Hughes in the hallway outside of the apartment. Defendant stated that he only hit Hughes one time in an attempt to subdue him and that Hugh's injuries were a result of Shue's actions.
The jury found Defendant guilty of felonious assault. The trial court sentenced him accordingly. Defendant timely appealed, asserting six assignments of error.
 II.
A.
 The trial court erred as a matter of law and to the prejudice of [Defendant] when it instructed the jury about complicity when the indictment did not charge, nor was it amended to charge [Defendant] with complicity.
 In his first assignment of error, Defendant has essentially asserted that the trial court erred when it instructed the jury on the offense of complicity to commit felonious assault when the indictment only charged him with felonious assault. Specifically, he has asserted that, by instructing the jury on complicity, the trial court effectively changed the name and identity of the crime charged and materially affected his ability to present a defense.
Pursuant to R.C. 2923.03(F), an accomplice to the commission of an offense is to be prosecuted and punished as if he were a principal offender. The statute also provides that a charge of complicity may be stated in terms of the complicity statute or in terms of the principal offense. R.C 2923.03(F); see also Statev. Tumbleson (1995), 105 Ohio App.3d 693, 697. It is well settled that when the prosecution charges and tries an aider and abettor as a principal, a jury instruction on complicity may be given if the evidence adduced at trial reasonably indicates that the defendant was an aider and abettor rather than a principal offender. Tumbelson, 150 Ohio App.3d at 697.
Further, Crim.R. 7(D) allows the trial court to amend an indictment at any time before, during or after trial as long as no change is made in the name or identity of the crime charged. Id. By instructing the jury on complicity to commit felonious assault, the trial court did not change the name or identity of the crime charged. Therefore, it was inconsequential that Defendant was charged for the principle offense rather than under the complicity statute. The evidence adduced at trial reasonably indicated that Defendant was an aider and abettor; therefore, the trial court properly instructed the jury on complicity. Accordingly, Defendant's first assignment of error is overruled.
B.
 [Defendant's] rights under the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution and Article I Sections 10 and 16 of the Ohio Constitution were violated when the trial court erroneously denied [Defendant's] request to instruct the jury on aggravated assault.
 In his second assignment of error, Defendant has asserted that the trial court erred when it denied his request for a jury instruction on the offense of aggravated assault. He has asserted that he was entitled to a jury instruction on aggravated assault because it is an offense of inferior degree to felonious assault. This Court disagrees.
A defendant is entitled to have a proposed jury instruction included in the charge to the jury only if it is a correct statement of the law, it is pertinent, and it is not included in the general charge. State v. Theuring (1988), 46 Ohio App.3d 152,154. In a trial for felonious assault, an instruction for aggravated assault must be given to the jury only if the defendant presents sufficient evidence of serious provocation. State v.Deem (1988), 40 Ohio St.3d 205, paragraph four of the syllabus.
 Provocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force. In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time.
Id. at paragraph five of the syllabus.
Even though aggravated assault is an offense of inferior degree to felonious assault, the evidence presented in this case did not support an instruction on aggravated assault. Defendant did not put forth any evidence of provocation in this case. To the contrary, Defendant contended that he acted in self-defense based on his assertions that Hughes was wielding a knife. Defendant testified that he lunged at Hughes in an attempt to subdue him, not because Hughes provoked him in anyway. Furthermore, Defendant repeatedly testified that he was afraid during the incident. "Fear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage" at the time of the incident. State v. Mack
(1998), 82 Ohio St.3d 198, 201. An instruction on aggravated assault was unsupported by the evidence and was inconsistent with Defendant's claim of self-defense. Therefore, the trial court did not err when it refused Defendant's request for a jury instruction on aggravated assault. Accordingly, Defendant's second assignment of error is overruled.
C.
 [Defendant's] right to Due Process of Law, as guaranteed by the Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution and Article I sections 10 and 16 of the Ohio Constitution, was denied when he was convicted of and sentenced for the crime of felonious assault on evidence which was against the manifest weight of the evidence.
 In his third assignment of error, Defendant has asserted that his conviction for felonious assault was against the manifest weight of the evidence. To determine whether a conviction is against the manifest weight of the evidence:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
 State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175; see, also, State v. Otten (1986), 33 Ohio App.3d 339, 340.
Defendant was convicted of felonious assault in violation of R.C. 2903.11(A), which provides that no person shall knowingly cause serious physical harm to another or cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordnance. R.C. 2901.01(A)(5) defines serious physical harm as:
 (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 (b) Any physical harm that carries a substantial risk of death;
 (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.
 Defendant has asserted that the State failed to show that the victim's injuries fit the description of serious physical harm as defined by R.C. 2901.01(A)(5) or that Defendant caused or attempted to cause physical harm with a deadly weapon or dangerous ordnance. Defendant's assertions are without merit.
The State submitted Hughes's medical records into evidence during the trial. The medical report indicates that Hughes received stitches in his lip. The report notes that Hughes would have a scar on his lip, but it would not be a bad scar. The jury could have reasonably found Hughes's injury to be a disfigurement of a permanent nature, constituting serious physical harm. SeeState v. Darden (Apr. 1, 1992), Lorain App. No. 91CA005131, unreported, at 3 (concluding that a scar as well as dislocation of cartilage could reasonably be permanent disfigurements).
Further, the jury heard testimony from Whalen that Defendant hit Hughes with a gun. Then, the jury heard Defendant's testimony that he did not hit Hughes with a gun. "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony." State v. Gilliam (Aug. 12, 1998), Lorain App. No. 97CA006757, unreported, at 4. Additionally, the evaluation of the weight to be given to the evidence and evaluation of the credibility of the witnesses are functions primarily reserved for the trier of the fact. This is not an exceptional case in which the weight of the evidence warrants a new trial. Accordingly, Defendant's third assignment of error is overruled.
D.
 [Defendant's] right to Due Process of Law, as guaranteed by the Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution and Article I sections 10 and 16 of the Ohio Constitution, was denied when the trial court denied [his] [Crim.R. 29] motion for acquittal on evidence which was insufficient as a matter of law.
 In his fourth assignment of error, Defendant has argued that the trial court incorrectly denied his Crim.R. 29 motion. Specifically, he has asserted that the State failed to present sufficient evidence of all of the elements of felonious assault. His argument is without merit.
To determine whether the evidence before a trial court was sufficient to sustain a conviction, an appellate court must view that evidence in a light most favorable to the prosecution:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus; see, also, State v. Thompkins (1997), 78 Ohio St.3d 380, 386 ("`[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law"). "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." State v. Roberts (Sept. 17, 1997), Lorain App. No. 96CA006462, unreported at 4. Based on this Court's determination that Defendant's conviction was not against the manifest weight of the evidence, this Court concludes that his conviction was supported by sufficient evidence. Accordingly, Defendant's fourth assignment of error is overruled.
E.
 The trial court abused its discretion when it failed to grant [Defendant's] motion for a new trial.
 In his fifth assignment of error, Defendant has asserted that the trial court abused its discretion when it denied his motion for a new trial. This Court disagrees.
Crim.R. 33(A)(6) provides that a trial court may grant a defendant a new trial "[w]hen new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial." Before a trial court may grant a defendant a new trial on the ground of newly discovered evidence, the defendant must show that the evidence (1) discloses a strong probability that a new trial will yield a different result, (2) has been discovered since trial, (3) could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence. State v. King (1989), 63 Ohio App.3d 183,191, citing State v. Petro (1947), 148 Ohio St. 505, syllabus. All of these requirements must be satisfied in order for a new trial to be granted. When reviewing a trial court's ruling on a motion for a new trial, an appellate court can only reverse the order of the trial court if the trial court abused its discretion. State v. Shepard (1983), 13 Ohio App.3d 117, 119. To constitute an abuse of discretion, a trial court's action must have been arbitrary, unreasonable, or unconscionable. See Stateex rel. The V Cos. v. Marshall (1998), 81 Ohio St.3d 467, 469.
Defendant has asserted that he was entitled to a new trial because he had newly discovered evidence proving that he did not cause serious physical harm to Hughes. Subsequent to the jury verdict in this case, Shue moved the trial court to dismiss the jury verdict against Defendant. In that motion, Shue asserted that Defendant did not cause serious physical harm to Hughes by means of a dangerous weapon. Shue asserted that he had entered a guilty plea to the charges filed against him as a result of the incident and that, by doing so, he took full responsibility for the serious physical harm caused to Hughes. Defendant has asserted that based on Shue's motion he is entitled to a new trial. Defendant's argument is without merit.
Shue's motion offers no new revelations and fails to meet the requirements of newly discovered evidence. At trial, Defendant testified that he was not responsible for causing the serious physical harm to Hughes and that he did not see or use a gun during the incident. Therefore, Shue's assertions were merely cumulative to evidence presented at trial. Further, Defendant has failed to show that this evidence could not have been discovered prior to trial. Defendant did not attempt to call Shue as a witness even though he knew that Shue was involved in the incident. Finally, the evidence does not disclose a strong probability that a new trial would yield a different result. The State presented the testimony of three witnesses who stated that both men were responsible for assaulting Hughes. It is unlikely that Shue's testimony that he alone was responsible for causing the serious physical harm would yield a different result. Accordingly, the trial court did not abuse its discretion by denying Defendant's motion for a new trial. Defendant's fifth assignment of error is overruled.
F.
 [Defendant's] Sixth Amendment right to counsel was violated due to the ineffectiveness of his trial counsel which was prejudicial to [his] rights to a fair trial in violation of [his] rights under the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution, and Sections 10 and 16 of the Ohio Constitution.
 In his sixth assignment of error, Defendant has asserted that his trial counsel was ineffective for failing to call Shue to testify during the trial. He has asserted that he was prejudiced by his trial counsel's failure to call Shue, because the trial court denied his motion for a new trial on the grounds that he did not take all steps necessary to show that the evidence could not have been discovered prior to trial. Defendant's argument is without merit.
A properly licensed attorney in Ohio is presumed competent.State v. Smith (1985), 17 Ohio St.3d 98, 100. The burden of proving counsel's ineffectiveness, therefore, is on the defendant.Id. A defendant is denied effective assistance of counsel when his attorney's performance falls below an objective standard of reasonable representation and the defendant is prejudiced as a result. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. To show prejudice, the defendant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Id. at paragraph three of the syllabus.
Defendant has asserted that his trial counsel was ineffective for failing to call Shue and that he was prejudiced by that failure because it resulted in the denial of his motion for a new trial. The trial court listed three reasons for denying Defendant's motion for a new trial. Initially, the trial court denied Defendant's motion because he failed to prove that the evidence offered would create a strong probability that it would change the result if a new trial was granted. The trial court could have stopped there and denied the motion; however, the court went on to note that Defendant could have called Shue to testify during the trial. Therefore, the court concluded that Defendant did not take all steps necessary to show that the testimony could not have been discovered prior to trial. Finally, the trial court noted that Shue's proffered testimony would simply contradict former evidence. The trial court, therefore, based its denial of Defendant's motion for a new trial on all three grounds.
Debatable trial tactics and strategies do not constitute a denial of effective assistance of counsel. State v. Clayton
(1980), 62 Ohio St.2d 45, 49, certiorari denied (1980),449 U.S. 879, 66 L.Ed.2d 102. Defense counsel's selection of witnesses to call at trial is considered a trial tactic. State v. Coulter
(1992), 75 Ohio App.3d 219, 230. Defendant has failed to demonstrate that his counsel's failure to call Shue to testify was anything other than acceptable trial strategy. Furthermore, even assuming arguendo, that defense counsel was ineffective for failing to discover the evidence prior to trial, Defendant has failed to demonstrate that he was prejudiced by defense counsel's actions. The trial court stated two other grounds for its denial of Defendant's motion for a new trial. Accordingly, Defendant's sixth assignment of error is overruled.
 III.
Defendant's assignments of error are overruled. The judgment of the trial court is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________________ BETH WHITMORE
CARR, P.J., BATCHELDER, J., CONCUR.